The Chief Justice
delivered the opinion.
This was a bill with injunction, filed by Pie-son, to stay proceedings upon a judgment at law obtained against him by Meaux, upon a note for $110.
Pierson, in his bill, alledges that in 1805, Meaux engaged him to attend to a suit of great consequence, which Meaux had depending in the superior court of chancery in Richmond, in Virginia, agains Wenston and others, and agreed to uive him a satisfactory compensation for bis services; and in the event of the suit being decided in his favor, to pay him a horse worth from 150 to $200; That about the same time, Meaux proposed, as he would be owing him for his services, to let him have two horses at the price of $180, to be discounted out of the demand arising from his services, and that he accepted the proposition, and took the horses; hut, lest he should die before the services were performed, it was agreed that he should execute a note far the price of the horses, payable the ensuing Christmas.
That shortly after this arrangement, be went to Virginia, and attended to the suit for Meaux at the different terms of the court of chancery in Richmond, rode about the county, collected the necessary testimony in said suit, entered himself as security for the costs, and paid such fee bills as came against him during the space of about, four years; and in his agency had so proceeded with said suit that the chancollor, in a short time thereafter, would, most probably, have rendered a decree in Meaux’s favor, when Meaux, by appointing another agent, superceded him: That shortly afterwards, he returned to Kentucky, and demanded his note to be given up, and prepared a settlement with Meaux; but that Meaux refused to make him any adequate compensation for his services, or to deliver op his note, and has brought suit and recovered judgment thereon.
Meaux, iu bis answer, slates, that having heard the suit *5 in Virginia was dismissed for want of security for costs, he requested Pierson to become security lor the costs, and request bis atiendes to renew the suit, and probably gave hio. a memorandum upon that subjtcl; but he denies that he invest' d Pierson with any authority. He declares that be did promise the complainant a liberal compensation for his trouble on the decision of the suit, provided it should eventuate in bis favor; but he does noi recollect, nor can lie admit, the promise of such a horse as is set forth in the bilí. Fe admits that Pierson became security for the costs o‘ the suit in Virginia, but says he again removed from Virginia, without making any provision for the costs; and that be earoe to Kentucky and never even gave him notice oí that circumstance, and consequently the suit would have been dismissed a second time, liad not a certain John Aiilchel, from considerations of friendship for him, became security. Such conduct as tins, he slates, he is advised would release him from any liability for the little services performed by Pierson.
He states that he is realy and willing, and has always been so, to pay or allow, out of this demand, all costs which Pierson may have satisfied; and that he has even offered to pay a reasonable compensation for any trouble, although not conscious of any legal or moral obligation to do so He says lie cannot admit, hut denies, any promise to suspend a collection of the money, mentioned in the note, until a decision of the suit, and then to make such allowance as represented — on the contrary, the stipulations and his understanding, were, that the money was to be paid agreeably to tin* tenor of the note; and more effectually to secure it, John Pierson joined in giving the note.
The circuit court, on a final hearing, dissolved the in-i junction, and dismissed the bill with costs; and Pierson has ¿nought, the case to this court by writ of error.
It is satisfac'orily proved that Means engaged Fierson as his agent, to attend to the suit in t irginia, and agreed to give him a liberal compensation for his services; aud it is equally well proved, that Pierson, with the most scrupulous fidelity, discharged the functions of his agency; that he became security for the costs, paid some fee bills” attended the several terms of the court, where the suit ivas depending, and, in other respects, bestowed unceasing attention upon the business of the suit, for Hie space of between three and four years, when lie was ?uders«:cded lit the appointment of another agent, ^'be justice of his claim, therefore, is in- *6 eonfroverfnbly established. Bu< the difficulty isinacesnnt of equity in giving im relief H* had no doubt an adequate remedy ai law; and bis case is not one of which, in general, a court of equitv has concurrent jurisdiction with a court of law. Where there are mutual demands, a court of equitv will sometimes interpose to set off one detna.d against the other; but if the demand, sought to he set off, is not of a nature to give to a court of equity jurisdiction, there musl be some conneciion between the demands to justify its interposition. Whether such a connection exists in this case, or not, is a question upon which we have great hesitation in pronouncing an opinion.
A ehancet-Sor Wili some tim. s imer fere and set off one demand again* ¡ ano her; bu: the demand. sougM 10 be set off mus; be of a nature to give to the ehanceilorju-risdictio", or tiler must be some roll not: too between the demands.
Where a bill makes an allegation of a fact, which, if true, must be iliiin the knowledge ot ¡lie clef'. he .should res pond to ii po-si'.iveiy; if the oi-;;.or is equivocal,the lull wiii be I'.ikon as true.
There is no direct proof upon this subject. Pierson, however, in his bill, alledges that the note was to be discounted out of the demand arising from his services, and Meaux, in his answer, makes no direct response to that allegation. He says, “that he cannot admit, but denies, any promise to suspend the collection of the money until the decision of the suit:” On the contrary, he states, “that the si ipulations, and his understanding, were, that the money was to be paid agreeable to the tenor of the note.” But this is evidently no direct denial that the one demand was to be set off or discounter! from the other; nor can it be construed to be equivalent to such a denial For, as Pier-son was, immediately after the execution of the note, to enter upon the business of Meaux. the parties must have expected that he would have expended money and rendered services to a considerable amount before the time when the noie became due; and notwithstanding, therefore, the stipulations were, that the money due by the note was to be paid according to its tenor, and that Meaux had made no promise to suspend its collection, yet he might have stipulated that the one demand should be discounted from the other; for a discount, though not a payment in the technical sense of the word, is so considered in popular language. Whether the one demand was to be discounted from the other, or not, was a matter which must have been within Meaux’s knowledge, and he ought to have given a direct response, either in the affirmative or negative, to the allegation of the bill upon this point; and not having done so, the allegation must be taken as true. The truth of the allegation is, too, rendered, in a great degree, probable, not only from the circumstances that the contracts were made about the same time, and that the parties must have had an *7 expectation that the demands would exist cotemporaneously; hut Croat the circumstance that Meaux, as long as Pier son was engaged in attending to the suit, never made any demand of the money due by the note, and that he did not until after the dispute arose about the amount of the compensation to which Pierson was entitled, take any steps to coerce payment.
Pope for plaintiff, Haggin and Wickltjfe for defend a at.
We think, therefore, that Pierson is entitled to relief to the extent of the money advanced bv him for Meaux, and a reasonable compensation for his services, to be ascertained by the verdict of a jury. With respect to the horse which was payable on the event of the suit being determined in Meaux’s favor, Pierson has shewn no title; for he has neither alledged nor proved that the suit has been determined.
The decree must be reversed with costs, and the cause remanded, that a decree may be there entered in conformity to the foregoing opinion, and for such further orders and decrees to be made therein as may be necessary to carry the same into effect.